# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39390**

_____

**UNITED STATES**
*Appellee*

v.

**Jared D. BAVENDER**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 23 August 2019

_____

*Military Judge:* Brian D. Teter.

*Approved sentence:* Dishonorable discharge, confinement for 3 years, and reduction to E-1. Sentence adjudged 29 September 2017 by GCM convened at Buckley Air Force Base, Colorado.

*For Appellant:* Major Jarett F. Merk, USAF; Brian L. Mizer, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Captain Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Judge POSCH delivered the opinion of the court, in which Senior Judge J. JOHNSON and Judge KEY joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

POSCH, Judge:

A general court-martial composed of officer members found Appellant guilty, contrary to his pleas, of one specification each of receipt and viewing, on divers occasions, of child pornography, in violation of Article 134, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] Appellant was also found guilty, consistent with his plea, of one specification of violating a general regulation by searching for and viewing pornography on a government computer on divers occasions, in violation of Article 92, UCMJ, 10 U.S.C. § 892. Appellant was sentenced to a dishonorable discharge, confinement for three years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant asserts eight assignments of error:[2] (1) whether the military judge erred by denying a motion to suppress evidence; (2) whether the military judge erred by admitting evidence of Appellant's sexual attraction to children under Military Rule of Evidence (Mil. R. Evid.) 404(b); (3) whether the military judge erred by ruling that trial defense counsel's cross-examination of a Government witness opened the door to admitting evidence in rebuttal; (4) whether the military judge erred when he found the six images in Prosecution Exhibit 4 depicted "lascivious exhibition of the genitals" and admitted the exhibit into evidence; (5) whether Appellant's convictions of Specifications 1 and 2 of Charge I are factually or legally insufficient because the Government failed to prove Appellant received and viewed child pornography within the charged timeframe; (6) whether Appellant's convictions of Specifications 1 and 2 of Charge I are factually or legally insufficient because the Government's theory of criminal liability was that Appellant's conduct was *per se* service discrediting; (7) whether Appellant's transcript is substantially verbatim; and (8) whether Appellant's sentence, which included three years confinement and a dishonorable discharge, is unduly severe. In addition, we consider the issue of timely appellate review. We find no prejudicial error and affirm.

## I. BACKGROUND

While attending a motivational seminar, Appellant called two supervisors on the phone and relayed he was a "criminal" because he had looked at child pornography. Appellant wanted to clear his conscience and tell his commander what he had done. That same day, Appellant similarly reported to his first sergeant he had "done illegal things," and volunteered he had viewed child pornography as recently as two weeks prior. Appellant admitted he saved the

---

[1] All references to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*).

[2] We reordered Appellant's fifth and sixth assignments of error.

pictures to a personal computer, and later deleted them because he felt ashamed and embarrassed.

Later that afternoon, Appellant met with Special Agent (SA) VL and a second agent of the Air Force Office of Special Investigations (AFOSI). Appellant told the agents he wanted to come clean about his "lifelong addiction to pornography that descended into illegal child pornography." During the course of a 9–10 hour interview, Appellant volunteered he was sexually attracted to 13–17-year-old girls, and though he preferred to look at teenage girls on the Internet, he had also viewed images of nude boys and younger children as well.

Appellant described his reaction to the images he had seen online, stating "holy s\*\*t, that's illegal child pornography," and knew it was child pornography "beyond a shadow of a doubt." Appellant stated some of the images did not depict sexual acts, rather they were images from nudist websites, but he nevertheless considered the images to be pornographic because he was sexually aroused and masturbated to them. Appellant explained he had sought help for his addiction, and learned that his sexual attraction to children was on a sliding scale to ever younger children, and was concerned that in time he would be looking at toddlers for sexual gratification. Appellant swore to a hand-written statement explaining that "some of my pornography use has been illegal child porn," and that he had viewed child pornography on nudist websites. Appellant explained he "didn't get into child pornography until [he] was 31 years old," shortly after his first overseas deployment.

At trial, the Government presented Appellant's admissions along with evidence culled from over 12,000 pornographic images of all ages, mostly of adults, found on Appellant's media. The members convicted Appellant of knowingly and wrongfully receiving and viewing, on divers occasions, visual depictions of minors engaging in sexually explicit conduct as charged in Specifications 1 and 2 of Charge I.

## II. DISCUSSION

### A. Authorization to Search Appellant's Digital Media

Appellant asserts the military judge erred in denying the Defense motion to suppress evidence found on his digital media. We disagree.

#### 1. Affidavit Supporting the Probable Cause Authorization

During his interview with the AFOSI agents, Appellant was asked and gave consent for the agents to search his off-base residence for digital media devices that Appellant identified would contain child pornography. The agents retrieved the devices during the interview, but Appellant withdrew

his consent the next day and before his media could be examined. Drawing from admissions Appellant made to them during his interview, SA VL prepared an affidavit in support of a probable cause authorization to search and seize the items they had previously retrieved.

As described in the affidavit, Appellant told his first sergeant he was addicted to pornography and had viewed child pornography about four times a year, most recently two weeks prior, when he saved images of child pornography to his computer, which he later deleted. The affidavit described how Appellant "began watching child pornography approximately five years ago in 2011" and "located pictures of underage girls on nudist websites and masturbated to them." Appellant found these pictures using search terms such as "young teenage porn" and "young nude girls." He "preferred viewing females aged 13–17, although he had viewed younger children." He described, in detail, how he "could tell the females were young" and "had viewed approximately 100–150 images of child pornography and downloaded approximately 30–40 images since 2011;" however, Appellant "deleted them because he felt bad." SA VL averred that Appellant "viewed and stored child pornography on several pieces of seized electronics" and child pornography "may exist on the other seized electronics." The affidavit relayed that Appellant described an image he viewed of an underage nude female posed next to an adult male.

After completing her affidavit, SA VL briefed the military magistrate who granted the authorization to search Appellant's media. The magistrate understood Appellant admitted seeking pictures of children on the Internet that were "sexually explicit in nature." The magistrate testified at the suppression hearing that he understood the Government sought "sexually explicit pictures of children under the age of 18" on Appellant's media. Relying almost exclusively on Appellant's admissions as detailed in SA VL's affidavit, the magistrate found probable cause to search Appellant's media for images that met this description.

**2. Defense Motion to Suppress Evidence**

A search of Appellant's media produced six images that the Government presented at trial as proof that Appellant received and viewed child pornography as charged in Specifications 1 and 2 of Charge I. The search also revealed eight[3] images of naked children that the Government offered under Mil. R. Evid. 404(b), as well as 55 images that the Government would present in rebuttal. Appellant moved unsuccessfully to suppress the evidence arguing

---

[3] One of the images showed a collage of multiple children. Accordingly, there were 20 pictures of children among the eight images.

that the affidavit SA VL provided to the magistrate was incomplete and therefore misleading; and, aside from the omissions, the magistrate did not have a substantial basis for finding probable cause.

Contrary to the stance Appellant maintained with the AFOSI agents that he knew "beyond a shadow of a doubt" that the images he sought and viewed were child pornography, the Defense argued it was simply not reasonable to conclude that the images Appellant himself described with that label were proscribed by law. The Defense offered evidence that no information was included in the affidavit about Appellant's account of the settings, actions or poses of the children. Similarly, Appellant told the agents how he sought pictures of nude children by searching "nudist websites." The pictures he found, so he claimed, did not depict minors engaged in sexual acts. Appellant denied looking at images on the Internet of children "actually having sex," and maintained that the closest thing to a sexual image he saw online was a photo from a nudist website of a group of people standing naked and looking at the camera. One of those individuals was a teenage girl, and it was possible she was looking at a boy's genitalia. The Defense relayed to the military judge that none of these facts were included in SA VL's affidavit or provided to the magistrate, thereby rendering the search authorization inadequate.

### 3. Military Judge's Ruling Denying the Motion to Suppress

The military judge denied the motion to suppress and relied on SA VL's affidavit in his ruling. The military judge found that SA VL's affidavit, on which the magistrate relied for his probable cause determination, provided a fair probability that evidence would be found on Appellant's media that showed he received and viewed child pornography. The military judge explained:

> Given the details of the confession outlined in the affidavit, including (1) a specific description of an underage minor; (2) the viewing of child pornography happened about four times a year, most recently two weeks prior to the interview; (3) the cycle of saving images of child pornography and later deleting the images; (4) the search terms used to find the images; (5) his preference for viewing females 13–17 years old, although he had viewed younger and knew, with specificity, they were underage; and (6) the location and description of electronics identified by the Accused as potentially used to download, store and delete child pornography, there was a sufficient factual demonstration to support that a crime had been committed.

Relying again on the affidavit, the military judge found overwhelming evidence that Appellant had downloaded and viewed child pornography based

on the details Appellant gave to the AFOSI agents including "how [Appellant] knew the images to be those of which he should not be either downloading or viewing." The military judge ruled that the magistrate had sufficient probable cause to authorize the search of Appellant's media for evidence that Appellant viewed and received child pornography.

The military judge made no findings of fact or conclusions of law in response to Appellant's argument that omissions in SA VL's affidavit were material to the magistrate's probable cause determination. The Defense did not confront SA VL at the suppression hearing with the claim that the omission of this information was intentional or reckless, and no evidence was presented that it was, other than what one might infer from the omissions themselves.

**4. Law**

We review a military judge's ruling on a motion to suppress for an abuse of discretion, viewing the evidence in the light most favorable to the prevailing party. *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016). The military judge's findings of fact are reviewed for clear error while conclusions of law are reviewed de novo. *Id.*

When reviewing a military magistrate's issuance of a search authorization, we "do not review [the military magistrate's] probable cause determination de novo." *Id.* at 125. Instead, we examine whether a "military 'magistrate had a substantial basis for concluding that probable cause existed.'" *Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017) (quoting *United States v. Rogers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009)). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When a military magistrate has "a substantial basis to find probable cause, a military judge [does] not abuse his discretion in denying a motion to suppress." *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007).

If a false statement is presented to the military magistrate, appellant has the burden to first establish by a preponderance of evidence that the false statement was made "knowingly and intentionally, or with reckless disregard for the truth." Mil. R. Evid. 311(d)(4)(B); *see also Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Although neither Mil. R. Evid. 311 nor *Franks* expressly extends to omissions, the United States Court of Appeals for the Armed Forces (CAAF) has extended the same rationale to "material omissions." *United States v. Mason*, 59 M.J. 416, 422 (C.A.A.F. 2004). "[E]ven if a[n] . . . omission is included in an affidavit, the Fourth Amendment is not

violated if the affidavit *would still show probable cause* after such . . . omission is . . . corrected." *Id.* (quoting *United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001)). Therefore, for an appellant to be entitled to relief due to matters not presented to the magistrate, the appellant "must demonstrate that the omissions were *both* intentional or reckless, *and* that their hypothetical inclusion would have prevented a finding of probable cause." *Mason*, 59 M.J. at 422 (citing *United States v. Figueroa*, 35 M.J. 54, 56–57 (C.M.A. 1992)) (emphasis in original).

**5. Analysis**

Appellant renews his claim raised at trial that the military magistrate did not have a substantial basis to find probable cause to search Appellant's digital media. Appellant also claims again that the omission of material facts from SA VL's affidavit should invalidate the magistrate's probable cause determination. We are not persuaded.

As found by the military judge, Appellant repeatedly admitted to viewing child pornography which he sought on the Internet. Appellant described his intentions to view images of nude females aged 13–17 years, and provided details about the actions he undertook to find and view child pornography. Neither the magistrate nor the military judge erred in taking Appellant's words at face value.

The evidence available to the magistrate, as found by the military judge, offered the magistrate more than the evidence relied on by the magistrate in *United States v. Leedy*, 65 M.J. 208 (C.A.A.F. 2007). In *Leedy*, the appellant's misconduct came to light when his roommate saw titles of recently played or accessed files on the appellant's computer. *Id.* at 211. One file was named "14 year old Filipino girl." *Id.* Although the roommate did not remember the name of any other files, he recalled "some mentioned ages and some mentioned [sexual] acts," and "became concerned that these files included child pornography." *Id.* The CAAF observed that the file name "does not appear in isolation" and considered additional contextual factors such as the sexually suggestive nature of the other titles and the investigator's opinion based upon experience that the names containing ages and acts were also consistent with child pornography. *Id.* at 215–16. In that context, the file name was enough to constitute a substantial basis for a search authorization. *Id.* at 217.

Even if we were to assume that the "child pornography" Appellant admitted viewing was as equivocal as the "14 year old Filipino girl" file name might have been in *Leedy*, Appellant's admission to searching the Internet for "young teenage porn" and "young nude girls" was not. There is more than a fair probability Appellant's search history would result in the discovery on his media of visual depictions of minors engaged in sexually explicit conduct.

We find that Appellant's use of these terms along with admission to masturbating to pictures of female children he found on nudist websites was part of the total circumstances available to the military magistrate to consider.

The magistrate here made a common-sense judgment of a fair probability that sexually explicit images of children would be found on Appellant's media. While we agree with Appellant that the affidavit considered by the magistrate omitted Appellant's account of the settings, actions, and poses of children depicted in the images he viewed, there is no basis to find that SA VL attempted to mislead the magistrate, or that omissions in her affidavit were deliberate or reckless and would have precluded a finding of probable cause had they been considered by the magistrate.

The military judge's findings of fact on which we rely support his ruling that the magistrate found sufficient probable cause for the Government to search Appellant's media. Accordingly, we find the magistrate had a substantial basis for finding probable cause, and conclude that the military judge did not abuse his discretion in denying Appellant's motion to suppress.

## B. Admissibility of Appellant's Sexual Interest in Children under Mil. R. Evid. 404(b)

Before trial, and again after Appellant's first arraignment, the Government disclosed to the Defense that it intended to offer evidence of Appellant's sexual interest in and attraction to children as a permitted use of a "crime, wrong, or other act" under Mil. R. Evid. 404(b). The Government offered the evidence to show Appellant's motive and intent to receive and view child pornography. Appellant argues the military judge erred when he admitted the evidence.

### 1. Law

A military judge's ruling under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 will not be disturbed except for a clear abuse of discretion. *United States v. Morrison*, 52 M.J. 117, 122 (C.A.A.F. 1999) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion and cannot be used to show predisposition toward crime or criminal character. However, such evidence may be admissible for another purpose,

including to show, *inter alia*, motive, intent, plan, absence of mistake, or lack of accident. Mil. R. Evid. 404(b)(2); *United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (citation and footnote omitted). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989).

We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b): (1) Does the evidence reasonably support a finding by the factfinder that Appellant committed other crimes, wrongs, or acts? (2) Does the evidence of the other act make a fact of consequence to the instant offense more or less probable? and (3) Is the probative value of the evidence of the other act substantially outweighed by the danger of unfair prejudice under Mil. R. Evid. 403? *United States v. Reynolds*, 29 M.J. 105, 109 (C.A.A.F. 1989). "If the evidence fails to meet any one of these three standards, it is inadmissible." *Id.*

### 2. Additional Background and Analysis

For ease of resolving Appellant's assignment of error, it is useful to sort the noticed Mil. R. Evid. 404(b) evidence into three categories, of which we find the first two categories are preserved on appeal.

### a. Sexual Interest in Neighborhood Children—Prosecution Exhibits 1 and 2

### i) Mil. R. Evid. 404(b) Notice, Arguments, and Ruling

Well before arraignment and in compliance with the military judge's scheduling order, the Government disclosed in a written notice to the Defense that it intended to introduce Appellant's admission to the AFOSI agents that he had a sexual interest in two female children, ages 13 and 16 years, who lived in his neighborhood, and that he masturbated unobserved while watching them from his bedroom window. The admission was a short excerpt from Appellant's 9–10 hour long interview with the AFOSI agents, segments of which would later be admitted as Prosecution Exhibit 1 and played to the members at various points throughout the trial. Appellant's written admissions, later admitted as Prosecution Exhibit 2, included a map Appellant drew of his neighborhood and details where the children lived.

The Defense moved to exclude the evidence on grounds that the acts differed substantially from the charged misconduct and that "[n]o fact of consequence relating to the charged offenses is made more or less probable by the noticed acts." The Defense argued the acts made Appellant "look like an overall sexual deviant" and would "inflame the passions of the factfinder," thereby diverting attention "away from the actual issues set to be litigated at trial." The Defense, citing Mil. R. Evid. 403, argued that any probative value was substantially outweighed by the danger of unfair prejudice.

The Government countered that the uncharged acts would make "a fact of consequence, [i.e., Appellant's] motive and intent to view and receive child pornography, more probable than it would be without the evidence." The Government explained that the acts were tied to its burden to prove that Appellant knowingly and wrongfully received and viewed child pornography. The Government also argued that the acts showed Appellant's "absence of mistake and lack of accident" with respect to the charged images and that the evidence satisfied the Mil. R. Evid. 403 balancing test.

The military judge allowed the Government to introduce the evidence under Mil. R. Evid. 404(b) and explained his decision in a written ruling that he included in the record of trial before authentication.

### ii) Analysis of the Ruling and Evidence

Applying the first *Reynolds* prong—whether the evidence reasonably supports a finding by the factfinder that Appellant engaged in other acts—the military judge found that Appellant's "own detailed admissions" sufficed as proof that he had sexual interest in two female children who lived in his neighborhood, and that he masturbated while watching them from his window. We find the military judge's fact-finding on the first *Reynolds* prong was supported by the evidence of record. Thus, we conclude that the military judge properly applied the first *Reynolds* prong.

Applying the second *Reynolds* prong—whether evidence of the other acts makes a fact of consequence to the instant offenses more or less probable—the military judge agreed with the Government that "[t]he existence of this evidence makes a fact of consequence, [Appellant]'s motive and intent to view and receive child pornography, more probable than it would be without the evidence." The military judge found the uncharged acts were "tied directly to the charge, which requires that [Appellant] 'knowingly' received and viewed child pornography."

We find the military judge correctly applied the second *Reynolds* prong. The facts of consequence in this litigated case included that Appellant knowingly and wrongfully received and viewed child pornography. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 68b.b.(1)(a). The Government had the burden to prove these elements beyond a reasonable doubt. As properly instructed by the military judge, "an act is done knowingly if done voluntarily and intentionally," yet an act that is "done because of mistake or accident . . . is not done knowingly." The military judge further in-

10

structed that knowledge may be inferred from "circumstantial evidence."[4] The military judge also properly instructed that "[a]ny facts or circumstances that showed that a visual depiction of child pornography is unintentionally or inadvertently acquired is relevant to wrongfulness."[5]

Evidence of Appellant's persistent sexual attraction to children under Mil. R. Evid. 404(b) made it more probable that Appellant knowingly and wrongfully received and viewed child pornography, and less probable that Appellant's acts were by mistake or accident. Thus, we conclude the military judge's application of the second *Reynolds* prong to determine whether Appellant's sexual attraction to children demonstrated Appellant's motive and intent to view and receive child pornography was not clearly unreasonable.

Applying the third *Reynolds* prong, the military judge found the probative value of the evidence of Appellant's "strong sexual attraction to children in his neighborhood" was not substantially outweighed by the danger of unfair prejudice to Appellant under Mil. R. Evid. 403. The military judge found the probative value of the evidence was "very high" because Appellant himself had described to AFOSI agents "in painstaking detail" how his sexual interest in neighborhood children correlated with his admission to downloading and viewing child pornography. The military judge explained that Appellant's masturbating was not overly prejudicial because it was not a punishable offense, and concluded that a tailored instruction, given both at the time the evidence was admitted and during final instructions, would be sufficient to ensure the members consider the uncharged acts for the limited permissible purposes under Mil. R. Evid. 404(b) and not for general bad character or propensity.

---

[4] The definition as instructed on by the military judge was substantially in accord with the explanation of the knowledge element in the *MCM. See MCM,* pt. IV, ¶ 68b.c.(2) ("An accused may not be convicted of possessing, receiving, viewing, distributing, or producing child pornography if he was not aware that the images were of minors, or what appeared to be minors, engaged in sexually explicit conduct. Awareness may be inferred from circumstantial evidence such as the name of a computer file or folder, the name of the host website from which a visual depiction was viewed or received, search terms used, and the number of images possessed.").

[5] In accord, *MCM,* pt. IV, ¶ 68b.c.(9) ("'Wrongfulness.' Any facts or circumstances that show that a visual depiction of child pornography was unintentionally or inadvertently acquired are relevant to wrongfulness, including, but not limited to, the method by which the visual depiction was acquired, the length of time the visual depiction was maintained, and whether the visual depiction was promptly, and in good faith, destroyed or reported to law enforcement.").

We agree with the military judge's determination that Appellant's sexual attraction to children who lived in his neighborhood was supportive of a government theory that Appellant intentionally sought and downloaded images of child pornography. The uncharged acts were less serious than the charged acts and any potential prejudice from their admission was limited because the acts were not obviously criminal. Consistent with his determination, the military judge gave the members an appropriate limiting instruction. The instruction allowed the members to consider the evidence they heard about Appellant's "thoughts and fantasies of a child or children in his neighborhood" and Appellant's "alleged actions with respect to these thoughts or fantasies" for the limited purpose of "its tendency, if any, to prove the accused had a sexual attraction to children during the charged time frame, thereby showing motive or intent to commit the charged offenses." Thus, as to the third *Reynolds* prong, we find the military judge properly applied the Mil. R. Evid. 403 balancing test and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

We conclude that the military judge properly applied the *Reynolds* test and his ruling was not a clear abuse of discretion. Accordingly, we hold that the military judge did not err in admitting evidence of Appellant's sexual interest in two female children who lived in his neighborhood to show Appellant's motive and intent to receive and view child pornography.

### b. Thoughts and Fantasies about Touching Young Girls, in a Decade Appellant Might be Attracted to Toddlers, and "Full Blown Sex Offender" Statements—Prosecution Exhibit 1

#### i) Mil. R. Evid. 404(b) Notice, Arguments, and Ruling

After the military judge ruled and allowed the Government to introduce Appellant's sexual interest in neighborhood children under Mil. R. Evid. 404(b), trial recessed for 24 days. On Saturday evening before trial reconvened on Monday morning, the senior trial counsel identified eight video segments from Appellant's AFOSI interview that the Government intended to offer, which were a combined 1 hour and 22 minutes long. On Sunday morning, in an email back to the Government, the Defense noted objections based on Mil. R. Evid. 404(b), to include that the Government had failed to provide notice. On Sunday evening, the senior trial counsel submitted "an amended [Mil. R. Evid.] 404(b) notice" by email to the Defense, in the form of "portions of [Appellant's] interview [with the AFOSI agents that] we intend to admit."

The extent of the Government's written Mil. R. Evid. 404(b) notice on Sunday evening consisted of Appellant's "general statements he made [to the AFOSI agents] about attraction to young girls [and] fantasizing about them,"

which the Government would later admit as Prosecution Exhibit 1. Specifically as it relates to admissibility under Mil. R. Evid. 404(b), Appellant admitted he was a "pornography and masturbation addict," and was sexually attracted to minors, especially females aged 13–17 years. Appellant fantasized about touching young girls but stated he never put himself in a situation where that was possible. Appellant elaborated that his sexual interest presently involved adolescents, but in a decade he might be attracted to toddlers "if this addiction were to continue." Appellant denied his "neighbor's daughter [was] at risk of being harmed," but that in "a few years down the road if [he were to] stay with the addiction and continue to live with it, [then] possibly." He later remarked that if his "addiction worsens" then it "could" go from the realm of the "virtual to try[ing] to do something in reality" and turn him into a "full blown sex offender."[6]

The Defense objected to these portions of Appellant's admissions citing Mil. R. Evid. 404(b).[7] The military judge held a Rule for Courts-Martial (R.C.M.) 802 conference the next day with both sides to "discuss[ ] the various contentions of the admission of the [AF]OSI interview of the accused." Trial counsel asked the military judge if he wanted "to hear argument on the video portions [of the AFOSI interview] that [they] were unable to agree on [with the Defense]?" After argument, the military judge reserved ruling, but stated that he was "inclined to deny the defense motion."

The next day, the military judge announced he had overruled the Defense's objections, and admitted all of the video segments the Government had outlined in its email. The military judge summarized an R.C.M. 802 conference he just concluded with the parties and stated he had "informed the parties" of his ruling "with respect to the disputed items." Ruling from the bench the military judge announced, "Those portions of the video, I find that . . . the probative value is not substantially outweighed by . . . any unfair prejudice to the accused as to the portions of [the] interview objected to [by the Defense]."

---

[6] Appellant stated, "I have wired my brain to only be sexual with pixels, so, could that change? It's definitely possible. Could that addiction turn[ ] me into a real full blown sex offender? It's possible."

[7] We find Appellant preserved the issue by objecting to admission of the interview excerpts in an email back to the trial counsel on Sunday at 1132 hours, marked as Appellate Exhibit XXI, which the military judge accepted as a "general outline of the [Defense's] objections."

### *ii) Analysis of the Ruling and Evidence*

The military judge did not err in admitting evidence that Appellant fantasized about touching young girls as part of numerous admissions Appellant made about his sexual interest in and sexual attraction to children. Applying the *Reynolds* test, Appellant's admissions sufficed as proof. A factfinder could conclude they demonstrated Appellant's motive and intent to view and receive child pornography not unlike Appellant's sexual interest in neighborhood children. And, the probative value was not substantially outweighed by unfair prejudice, particularly because the fantasies themselves were not crimes.[8]

We similarly find the military judge did not err in admitting evidence of Appellant's speculating that if his addiction to child pornography were to continue, then in a decade Appellant might be attracted to toddlers. Appellant's recorded admissions sufficed as proof under the first *Reynolds* prong. Although the speculative nature of the admission lessened its probative value under the second *Reynolds* prong, the Government presented evidence that showed Appellant had searched the Internet using the query, "cute toddler vagina," which was consistent with and gave context to the admission. SA VL testified that she had visited a website that Appellant had viewed two days before Appellant's AFOSI interview, and discovered an image of a female infant's bare bottom and exposed genitalia. Consequently, despite its speculative nature Appellant's admission that he might someday be attracted to toddlers was evidence from which a factfinder could find motive and intent to search the Internet for child pornography involving very young children. It also showed the absence of mistake. Under the third *Reynolds* prong, the probative value was not substantially outweighed by unfair prejudice as the initial speculative nature of the evidence was made more certain and confirmed by other evidence presented at trial.

---

[8] The military judge gave the members a limiting instruction when trial counsel finished playing the interview excerpts and again after the close of evidence. The instructions addressed Appellant's alleged thoughts and fantasies about a child or children in his neighborhood as well as Appellant's alleged actions with respect to those thoughts and fantasies. The military judge allowed consideration of the evidence for the limited purpose of its tendency, if any, to prove Appellant had a sexual attraction to children during the charged timeframe, thereby showing motive or intent to commit the charged offenses. The military judge did not allow the members to consider the evidence for any other purpose to include that he was a bad person or had general criminal tendencies and therefore committed the charged offenses.

However, we find the military judge erred in admitting Appellant's statement that his addiction could expand to sexual touching of children, such as his neighbor, and thereby make him a "full blown sex offender." Although Appellant's recorded admissions sufficed as proof under the first *Reynolds* prong, nonetheless, the speculative, even hypothetical, nature of the admission was unsupported by any other evidence and made the probative value highly doubtful under the second. Under the third *Reynolds* prong, the likelihood of unfair prejudice was high because Appellant's assertion that his fantasies might evolve to touching children were plainly not offenses that the Government could charge or undertook to prove in Appellant's case. The military judge did not individually address the statement in his ruling, made no findings of fact or conclusions of law, did not articulate his application of the *Reynolds* prongs, and, apart from an abrupt Mil. R. Evid. 403 balancing that covered an hour and 22 minutes of Appellant's admissions in one fell swoop, furnished no particularized analysis. Moreover, the military judge did not explain his decision to admit this evidence in a written ruling as he did with other Mil. R. Evid. 404(b) evidence. Accordingly, having no record on which to determine if the military judge applied correct legal principles to admit the evidence, and concluding from our independent analysis that the evidence failed to meet the second and third *Reynolds* prongs, we find a clear abuse of discretion by the military judge in admitting the statement.

Finding error, we test for material prejudice to Appellant's substantial rights. Article 59(a), UCMJ. 10 U.S.C. § 859(a). Admission of Appellant's "full blown sex offender" statement and its context created a potential risk that Appellant would be convicted and sentenced based on the possibility of future, more serious criminal acts and not the acts for which he was on trial. When there is nonconstitutional error in the admission of evidence, including under Mil. R. Evid. 404(b), we ask whether the evidence had a "substantial influence on the members' verdict in the context of the entire case." *See United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007) (citations omitted). "We consider four factors: (1) the strength of the government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citation omitted). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (citing *Harrow*, 65 M.J. at 200).

We conclude the erroneous ruling did not have a substantial influence on Appellant's convictions. The Government's case was built on Appellant's profuse admissions of wrongdoing by searching for, finding, and then viewing sexually explicit images of children. The Defense unsuccessfully challenged the lasciviousness of these images and the ones Appellant described in his

admissions to the AFOSI agents. The Defense also sought to minimize Appellant's knowledge that he received and viewed child pornography during the charged timeframe. The Government's case was insubstantially strengthened by the speculative nature of the statement at issue compared to substantial evidence properly admitted that Appellant received and viewed child pornography.

As discussed above, the context of Appellant's statement was that his addiction might expand to sexual touching of children, such as his neighbor. Any prejudice in admitting the statement was partially mitigated by the limiting instruction given to the members with respect to Appellant's "thoughts or fantasies about a child or children in his neighborhood."[9] Following the instruction to limit consideration of the evidence to Appellant's motive and intent to commit the charged offense, the military judge emphasized the members were not to consider this evidence for any other purpose. Considering the four *Harrow* factors together along with the limiting instruction, we conclude that the admission of Appellant's "full blown sex offender" comment did not have a substantial influence on the findings. Before and during sentencing argument, the military judge similarly instructed the members that Appellant was to be sentenced only for the offenses of which he had been found guilty. Accordingly, we find the error in admitting Appellant's "full blown sex offender" statement was harmless and did not materially prejudice Appellant's substantial rights.

### c. Eight Images of Naked Children—Prosecution Exhibit 3

About one week before trial reconvened with members, the Government noticed the Defense under Mil. R. Evid 404(b) of its intent to offer Prosecution Exhibit 3, which contained eight images of naked children found on Appellant's media, specifically his MSI Gaming Laptop. The Government offered, and the military judge admitted, the exhibit subject to a limiting instruction. The military judge explained to the members that the pictures were relevant for their tendency, if any, to show the absence of mistake on the part of Appellant and to show that Appellant had a sexual attraction for underage females, thereby evincing motive and intent to commit the charged acts.

---

[9] The instruction only partially addressed Appellant's statements about children in his neighborhood; it did not address Appellant's recognition that his addiction could evolve from the realm of the "virtual" to "reality" and that he might someday act on his thoughts and fantasies by sexually touching a child such as his neighbor.

Although raised by Appellant on appeal, we find Appellant has not shown that he objected to admission of Prosecution Exhibit 3, after notice by the Government that it would offer this evidence and a Government motion to pre-admit the evidence, which the Defense did not oppose in a written response.[10]

We conclude that Appellant's failure to move to exclude the evidence after the Government disclosed that it intended to admit the evidence under Mil. R. Evid. 404(b), together with Appellant's affirmative statement that he had no objection to its admission constitutes waiver. Consequently, Appellant's claim now that the military judge erred when he admitted Prosecution Exhibit 3 cannot be raised on appeal because, unlike forfeiture, waiver extinguishes error. *United States v. Simmons*, 2019 CCA LEXIS 156, at *11–14 (A.F. Ct. Crim. App. 9 Apr. 2019) (unpub. op.). The CAAF has recognized the service courts of criminal appeals' unique mandate under Article 66, UCMJ, 10 U.S.C. § 866, to "assess the entire record to determine whether to leave an accused's waiver intact, or to correct [an] error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016). However, we find no reason to pierce Appellant's waiver in this case. Even if Appellant was not deemed to have waived the issue at trial, we find it was not error, plain or otherwise, to admit the images in Prosecution Exhibit 3, for a limited purpose and subject to the limiting instruction the military judge gave to the members.

## C. Evidence of Other Images Admitted in Rebuttal—Prosecution Exhibit 8

### 1. Additional Background

During cross-examination of SA VL, the Defense elicited testimony about the large number of pornographic images found on the media seized from Appellant. The testimony revealed many more images of adult pornography had been recovered in contrast to the six charged images admitted by the Government to prove Appellant committed the charged offenses.

Trial defense counsel confronted SA VL with evidence that she found 124 pornographic images on Appellant's thumb drive, 5,575 on his laptop, and 6,726 on his hard drive. The Defense asked SA VL to verify "that's over 12,000 images in total, correct?" She acknowledged the figure and agreed

---

[10] The Defense initially objected to the exhibit on the basis of the Confrontation Clause, but then withdrew the objection. U.S. CONST. amend. VI. Also, the Defense objected on Mil. R. Evid. 404(b) grounds to images found in unallocated space on Appellant's Western Digital Hard Drive, but the forensic examiner testified the images at issue in Prosecution Exhibit 3 were all found on Appellant's MSI Gaming Laptop.

with the Defense that the majority were images of "pretty clear adult pornography." Trial defense counsel elicited that SA VL had identified only 62 images that were a "concern" to her as constituting child pornography from "this big bulk of about 12,000 images."

Based on this line of questioning, the trial counsel offered 55 of the 62 images referenced by the agent in her testimony as substantive evidence of additional images of child pornography that Appellant had received and viewed. The various images depict photographs of children engaged in acts of sexual intercourse and fellatio, as well as children in sexually suggestive poses, either alone, with other children, or with an adult. The military judge did not admit the images as substantive evidence as offered by the trial counsel, but over the Defense's objection found the images were relevant to "rebut a contention that [AF]OSI investigators had initially only identified" six charged images admitted by the Government to prove Appellant received and viewed child pornography. The military judge conducted a Mil. R. Evid. 403 balancing test and explained that he found the Defense's line of questioning to be "an effective cross-examination looking towards a narrowing of the images and also raising the possibility of a mistake or something along those lines." During final instructions, the military judge gave a limiting instruction to the members regarding the permissible use of the evidence.[11]

Appellant claims the military judge erred when he ruled that the Defense had "opened the door to the relevance of the other images" and then allowed the trial counsel to introduce the 55 images as rebuttal to SA VL's testimony on cross-examination. We disagree.

**2. Law**

We review a military judge's decision to admit rebuttal evidence for an abuse of discretion. *United States v. Pagel*, 40 M.J. 771, 781 (A.F. Ct. Crim. App. 1994) (citation omitted). When a military judge conducts a proper Mil. R. Evid. 403 balancing test before admitting evidence, his ruling will not be

---

[11] The instruction read, "the government introduced images contained in Prosecution Exhibit 8 for the purpose of [their] tendency, if any, to rebut a contention that [AF]OSI investigators had initially only identified images contained in Prosecution Exhibit 4 as what they believed it [sic] to be child pornography. You may also consider these images for their tendency, if any, to corroborate statements made by the accused to investigators related to the charged offenses[;] however, you may not consider this evidence to conclude that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged."

overturned "unless there is a clear abuse of discretion." *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998).

"It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Banks*, 36 M.J. 150, 166 (C.A.A.F. 1992) (citations omitted). "The scope of rebuttal is defined by evidence introduced by the other party." *Id*. (citations omitted).

### 3. Analysis

During cross-examination, the Defense elicited testimony that minimized the number of images Appellant received and viewed and suggested that out of over 12,000 images of adult pornography found on Appellant's media, only 62 images, which included the charged images, could meet what the Government considered to be the legal standard for child pornography.

The implication that the six charged images may have been downloaded by accident or unbeknownst to Appellant was fertile grounds for rebuttal by the trial counsel. The logical inference conveyed by the questioning, as the Defense later argued to the members, was that the charged images were "such a small fraction" of what was found on Appellant's media that there was reasonable doubt about whether Appellant knew he had downloaded child pornography. For the inference to work, the Defense necessarily had to brush aside or play down the content of the rebuttal images even though the Defense's questioning put the contents in issue. However, the content of the rebuttal images was relevant to determining whether Appellant was likely to have overlooked downloaded child pornography among the 12,000 images of mostly adult pornography. As such, we find the 55 images were properly admitted to explain and counteract the testimony introduced by the Defense on cross-examination that minimized the relative number of images that the Government identified as child pornography. *Banks*, 36 M.J. at 166. Accordingly, the admission of this evidence after the military judge articulated his Mil. R. Evid. 403 balancing test, accompanied by a limiting instruction, was not an abuse of discretion, and we find no error.

### D. Legal and Factual Sufficiency of Specifications 1 and 2 of Charge I

Appellant was convicted on the basis of his admissions to receiving and viewing child pornography, as well as forensic evidence obtained from his digital media, which included six images that the Government maintained were

child pornography.[12] Appellant's fourth, fifth, and sixth assignments of error collectively challenge the legal and factual sufficiency of the evidence supporting his convictions of Specifications 1 and 2 of Charge I.

We address Appellant's claim that the military judge erred when he found the six images introduced in Prosecution Exhibit 4 depicted "lascivious exhibition of the genitals" and admitted the exhibit into evidence. We then address Appellant's claim that his convictions are factually and legally insufficient because the Government failed to prove that Appellant received and viewed child pornography within the charged timeframe, and because the Government's theory of criminal liability was that Appellant's conduct was *per se* service discrediting. We conclude Appellant's convictions are legally and factually sufficient even with our finding that four of the six images in Prosecution Exhibit 4 are insufficient to support the convictions because the Government failed to present evidence that Appellant received or viewed the images during the charged timeframe.

### 1. Additional Background

The Government charged Appellant with receiving and viewing child pornography on divers occasions between on or about 1 January 2016 and on or about 16 August 2016. In advance of trial the Government noticed Appellant that it would offer six images of child pornography that investigators found in his media, which it asserted would be offered to prove that Appellant engaged in the proscribed conduct during the charged timeframe.

In response to a defense motion *in limine*, which the Government did not oppose, the military judge conducted a preliminary review of the six images offered as Prosecution Exhibit 4 to determine if they were "visual depictions of minors engaging in sexually explicit conduct" as a matter of law. As part of his review, military judge applied the definition of "sexually explicit conduct" from the *MCM,* pt. IV, ¶ 68b.c.(7)(e), including the so-called "*Dost* factors"[13] for determining what constitutes a "lascivious exhibition of the genitals or pubic area."[14] In a session held without members under Article 39(a),

---

[12] As noted previously, the Government also relied on evidence admitted under Mil. R. Evid. 404(b) to show the absence of mistake on the part of Appellant and to show that he had a sexual attraction for younger females, and therefore, motive or intent to commit the child pornography offenses.

[13] *See United States v. Roderick*, 62 M.J. 425, 429 (C.A.A.F. 2006) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).

[14] In *United States v. Rayl*, 270 F.3d 709 (8th Cir. 2001), the Eighth Circuit observed that "the meaning of 'lascivious exhibition of the genitals' is an issue of law" and rec-

*(Footnote continues on next page)*

UCMJ, 10 U.S.C. § 839, the military judge announced his ruling that a reasonable factfinder could conclude that each image met the legal definition of child pornography and admitted Prosecution Exhibit 4.

After the close of evidence on findings, the military judge instructed the members that in order to convict they needed to find that Appellant knowingly received or viewed visual depictions of minors "engaging in sexually explicit conduct." He explained that sexually explicit conduct means, *inter alia*, actual or simulated sexual intercourse, sodomy, masturbation, or "lascivious exhibition of the genitals or pubic area of any person."

The military judge explained in his instructions that "lascivious" means "exciting sexual desires or marked by lust," "not every exposure of the genitals or pubic area constitutes a lascivious exhibition," and "consideration of the overall content of the visual depiction should be made to determine if it constitutes a lascivious exhibition." The military judge further instructed the members to consider the same *Dost* factors, which he had applied previously in the session held without members, to determine whether an exhibition is lascivious:

> In making this determination, you should consider such factors as whether the focal point of the depiction is on the genitals or pubic area, whether the setting is sexually suggestive, whether the child was depicted in an unnatural pose or in inappropriate attire considering the child's age, [whether] the child was partially clothed or nude, whether the depiction suggests sexual coyness or willingness to engage in sexual activity, and whether the depiction is intended or designed to elicit a sexual response from the viewer[15] as well as any other factors [that] may be equally, if not more important, in determining whether a visual depiction contained a lascivious exhibition.[16] A visual

---

ommended that trial judges "conduct a preliminary review of whether materials offered by the government for this purpose depict sexually explicit conduct as a matter of law." *Id.* at 714 (internal citation omitted); *see United States v. Puckett*, 60 M.J. 960, 963 (A.F. Ct. Crim. App. 2005) (citing, with approval, this and other *Rayl* analysis as it "rests on a solid foundation of compelling logic").

[15] *See Roderick*, 62 M.J. at 429 (C.A.A.F. 2006) (citing *Dost*, 636 F. Supp. at 832).

[16] *See Roderick*, 62 M.J. at 429–30 ("In addition to these six factors, several of the federal circuit courts have recognized that 'although *Dost* provides some specific, workable criteria, there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition.'") (citations omitted).

> depiction however, need not involve all these factors to be a lascivious exhibition.

(Footnotes added).

The military judge concluded his instruction by charging the members that it was their role to find whether the images in question met the definition of visual depictions of minors engaged in sexually explicit conduct. He explained that although "the government has introduced images contained in Prosecution Exhibit 4 in direct support of the charges meaning the government contends that these images constitute child pornography," nonetheless, "[t]he determination whether these images constitute child pornography is solely within your discretion using the instructions that I have provided."

After arguments by counsel and procedural instructions on deliberations, the members evaluated the six images in Prosecution Exhibit 4 as well as other evidence in the case and returned a general verdict of guilty to both specifications.

**2. Law**

In order for the members to find Appellant guilty, the Government was required to prove beyond a reasonable doubt: (1) that Appellant knowingly and wrongfully received and viewed child pornography, to wit: visual depictions of minors engaging in sexually explicit conduct; (2) that Appellant did so on divers occasions between on or about 1 January 2016 and on or about 16 August 2016; and (3) that under the circumstances, the conduct of Appellant was of a nature to bring discredit upon the armed forces. *See MCM,* pt. IV, ¶ 68b.b.(1). "[C]hild pornography" is defined as "material that contains a visual depiction of an actual minor engaging in sexually explicit conduct." *Id*. at ¶ 68b.c.(1). "Sexually explicit conduct" includes "lascivious exhibition of the genitals or pubic area of any person." *Id*. at ¶ 68b.c.(7)(e).

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986), *aff'd*, 77 M.J. 289

(C.A.A.F. 2018)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [Appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

### 3. Analysis

#### a. Sufficiency of Six Images Admitted as Prosecution Exhibit 4

In his fourth assignment of error, Appellant renews the contention he made at trial that none of the six images admitted as Prosecution Exhibit 4 portrayed a visual depiction of a minor engaged in sexually explicit conduct, i.e., child pornography. Appellant likewise claims that the military judge erred in his preliminary review when he ruled that a reasonable factfinder could conclude that each of the six images met the legal definition of child pornography.

Although we ordinarily review a military judge's ruling admitting evidence for an abuse of discretion, *see e.g. Pagel*, 40 M.J. at 781 (A.F. Ct. Crim. App. 1994), legal sufficiency is a question of law we review de novo. *See Roderick*, 62 M.J. at 429. Accordingly, we find it suitable to evaluate the images under the less deferential, i.e. de novo, standard of review. At the same time, we make our own independent determination of factual sufficiency of the evidence.

We evaluated the content of two of the six images, 43381 and 43871, and conclude the images are sufficient to support Appellant's convictions. In the medical opinion of an expert in the field of forensic pediatrics,[17] the female children depicted in both images were less than 18 years of age with a high degree of medical certainty. Image 43381 depicts a child lying on her back with her legs spread and her genitals exposed. Image 43871 is a close-up picture of the pubic area of a young female. Her body appears small and she has

---

[17] The parties stipulated to the expert's expected testimony.

no evidence of pubic hair or shaving stubble. In both images the focal point of the depiction is on the child's genitals or pubic area and the child is nude. We find that a reasonable factfinder could have found beyond a reasonable doubt that each image depicted lascivious exhibition of the genitals or pubic area of a child, and thus constituted sexually explicit conduct. Thus, we are convinced that the Government met its burden of proof that Images 43381 and 43871 were each a visual depiction of a minor engaging in sexually explicit conduct.

Accordingly, we find Appellant's fourth assignment of error alleging none of the six images admitted as Prosecution Exhibit 4 portrayed a visual depiction of a minor engaged in sexually explicit conduct to be without merit as to Images 43381 and 43871. We do not resolve whether any of the remaining images admitted in Prosecution Exhibit 4, specifically Images 43417, 50120, 88680 and 37428, contain a similar such visual depiction because of our resolution of Appellant's fifth assignment of error, which we analyze next.

### b. Appellant Received and Viewed Child Pornography on Divers Occasions during the Charged Timeframe

The Government separately charged Appellant with receiving and viewing child pornography during an approximate seven-and-a-half-month charging window, that is, "on divers occasions between on or about 1 January 2016 and on or about 16 August 2016." Appellant asserts in a fifth assignment of error that the Government failed to prove that the proscribed conduct occurred during the charged timeframe. We agree, in part, with Appellant, but nonetheless find his convictions legally and factually sufficient.

Appellant asserts that his admission to viewing about 100–150 images of child pornography and downloading 30–40 like images "throughout [his] whole life," among other similar admissions, failed to place his conduct during the charged timeframe, much less that the images he described sufficiently depicted minors engaged in sexually explicit conduct. It follows, Appellant claims, that his convictions are legally and factually insufficient. The focus of Appellant's argument is his lack of specificity in some, but certainly not all, of the admissions he made to the AFOSI agents, even though the argument lets pass forensic evidence obtained from his media, which is where we begin our analysis.

### i) Images 43381 and 43871 and Other Evidence Appellant Received and Viewed Child Pornography during the Charged Timeframe

The Government's computer forensic examiner testified that two of the images he examined from Appellant's media that were admitted into evidence as part of Prosecution Exhibit 4—Images 43381 and 43871—were ob-

tained from visits to Internet websites in 2016.[18] As previously discussed, we find the content of the images depicted lascivious exhibition of the genitals or pubic area of a child, and, therefore, are sufficient to support Appellant's convictions.

At trial, the Government did not limit its proof to the six images admitted in Prosecution Exhibit 4, but relied on Appellant's admissions that he viewed and received other images that depicted a lascivious exhibition of a child's genitals or pubic area during the charged timeframe. *See Roderick*, 62 M.J. at 429–30 (combining a review of the *Dost* factors with an overall consideration of the totality of the circumstances). Appellant admitted to three different people that he had viewed child pornography in 2016. Appellant's supervisor testified that Appellant called him on the phone on 7 August 2016, and admitted he had "watched child porn" after Appellant experienced "a relapse 14 days ago." Appellant's first sergeant testified that Appellant told him he had viewed child pornography "about two weeks" prior to 7 August 2016. SA VL testified that Appellant admitted to going "on a six-day binge when he was looking at pornography, to include illegal forms," at the end of July 2016. Appellant also admitted to AFOSI agents that he viewed child pornography five times throughout 2016.

Nonetheless, Appellant renews the claim he made at trial that the "child pornography" label he attached to the images in his admissions does not categorically (or legally) establish that the visual depictions he received and viewed during the charged timeframe were of minors engaged in sexually explicit conduct. Even so, we find that a rational factfinder could conclude that it did. The Government introduced forensic evidence that reinforced Appellant's admissions to downloading sexualized images of nude children and refutes his claims. The forensic examiner explained that a user of Appellant's password-protected profile, "JABAV,"[19] made searches in 2016 that included the terms, "young naked girl" and "cute toddler vagina." The examiner determined that the JABAV profile was again used in 2016 to visit websites with title pages that read "underage nudist vids," and "underage pu**ies gallery." (Asterisks added). SA VL testified she visited a website that Appellant had viewed two days prior to Appellant's AFOSI interview on 5 August 2016,

---

[18] Appellant made admissions to his supervisory chain and was interviewed by the Air Force Office of Special Investigations on 7 August 2016. A forensic examination of his media ensued. Accordingly, evidence that Appellant engaged in an act in 2016 would establish that it took place during the charged timeframe.

[19] SA VL testified that Appellant explained to the AFOSI agents that his nickname, JABAV, was a combination of the letters in Appellant's first and last name.

and discovered an image of a female infant's bare bottom and exposed genitalia.

We find a rational factfinder could have applied the *Dost* factors along with the totality of the circumstances, *Roderick*, 62 M.J. at 429–30, as properly instructed by the military judge, and conclude that, on multiple occasions, Appellant received and viewed visual depictions of minors lasciviously exhibiting their genitals or pubic area during the charged timeframe. And, we are convinced that the Government met its burden of proof on these elements.

### ii) Images 88680, 37428, 43417, and 50120 Insufficient as Not Received or Viewed during the Charged Timeframe

Unlike the two images we find sufficient to support the convictions, the Government's forensic examiner provided no testimony that the remaining four images—Images 88680, 37428, 43417 and 50120—admitted in Prosecution Exhibit 4 were received or viewed by Appellant during the charged timeframe.[20] Specifically, we find that the Government did not prove that Images 88680 and 37428, which were found in unallocated space on Appellant's Western Digital hard drive, and Images 43417 and 50120, which were apparently found on a device referred to at trial as Appellant's "MSI Gaming Laptop," were received or viewed by Appellant "between on or about 1 January 2016 and on or about 16 August 2016."

Early in the Government's case the members heard Appellant's admission to viewing child pornography since 2011 when he was 31 years old, which left a period of five years prior to the charged timeframe when Appellant might have received and viewed the charged images that were found on his devices. During the senior trial counsel's direct examination of the forensic examiner, she elicited testimony about dates when Appellant visited a webpage, opened a database of thumbnail images, or when specific images were found to have arrived in a particular folder. His testimony established that in 2016 Appellant received or viewed 20 images that were admitted in Prosecution Exhibit 8 for the limited purpose of rebuttal, and 8 images admitted in Prosecution

---

[20] The Government's answer to the assignment of error explains how the "forensic examiner testified that he was able to determine that *two* of the images [Images 43381 and 43871] contained in Prosecution Exhibit 4 were obtained from visiting a website in 2016." (Emphasis added). The Government's apparent conclusion that the forensic examiner did not testify that he reached the same conclusion about all six images is consistent with our findings.

Exhibit 3 for the limited purpose of Mil. R. Evid. 404(b).[21] However, as discussed above, the images admitted in these exhibits were not the six charged images that the Government sought to prove were the images of child pornography Appellant received and viewed during the charged timeframe.

Near the end of the direct examination, the senior trial counsel directed the examiner's attention to the charged images admitted in Prosecution Exhibit 4. She first asked him about Images 88680 and 37428, which were found on Appellant's Western Digital hard drive, but no testimony was given that Appellant received or viewed these images in 2016, much less any timeframe when his analysis determined Appellant might have received or viewed the images.

Next, the senior trial counsel, directed the examiner to view Images 43417 and 50120, which were apparently found on Appellant's MSI Gaming Laptop:

> **Q** [Senior Trial Counsel]. Now, I'd like to speak with you about the images contained within the MSI gaming laptop. Specifically, 50120 and 43417. Now, I noticed . . . that the images we just viewed, 43417 and 50120 appeared to be the same image but with different resolution. . . . Could you explain why that might be? How that would come to be?
>
> **A** [Forensic Examiner]. It's possible that one is a thumbnail and the other is a full-size image.

Without eliciting testimony about where Images 43417 and 50120 were found within the laptop[22] or when Appellant may have received or viewed the two images, the senior trial counsel's very next statement directed the examiner to a different set of images found on Appellant's MSI Gaming Laptop—the images we do find sufficient to support Appellant's convictions:

> **Q**. 43871 and 43381.

---

[21] The forensic examiner explained the images were found on Appellant's MSI Gaming Laptop, and with particularity as to each group of images, either "within the folder thumb cache," or "within the Mozilla Firefox cache." All the images were located under Appellant's password-protected profile, "JABAV."

[22] The examiner's testimony at this juncture is not even clear that Images 50120 and 43417 were found on Appellant's MSI gaming laptop. The senior trial counsel's compound leading question assumed that they were, but the answer given was nonresponsive on this point.

Q. Could you explain to us where these files were found in the MSI gaming laptop?

A. *These* were found within the Mozilla Firefox cache folder in the password-protected user profile J-A-B-A-V.

Q. And in your expert opinion . . . , is the fact that *these images* were found within the Mozilla Firefox cache folder, does that mean that JABAV would have visited the website containing *this image*?

A. Yes, ma'am.

Q. Specifically, the webpage containing *this image*?

A. Yes, ma'am.

Q. And when, based on your analysis, would he have visited the webpage containing *these images*?

A. Sometime in 2016.

Q. I have no further questions for this witness.

(Emphasis added.). The examiner's testimony associating Appellant with "this" and "these" image(s) sometime in 2016 was in reference to Images 43871 and 43381 only. We find no rational trier of fact could have found otherwise, and we ourselves are not convinced beyond a reasonable doubt that "this" and "these" referenced images other than Images 43871 and 43381.[23]

We further find no other evidence in the record, either direct or circumstantial, from another witness or exhibit that convincingly establishes Appellant received or viewed Images 88680, 37428, 43417, and 50120 during the charged timeframe.[24] Accordingly, we conclude no rational trier of fact could

---

[23] We considered whether a factfinder could infer that all the images found on the MSI Gaming Laptop were, like Images 43871 and 43381, received or viewed during the charged timeframe; however, it is one thing to draw an inference from the evidence, and quite another to infer that all the images selected by the Government bore a legally significant similarity by reason only that the Government selected the images. Accordingly, we conclude that such an inference would not be a reasonable one.

[24] Although there is circumstantial evidence in the record that Appellant possessed the images in 2016 when investigators discovered them on his media, Appellant was not charged with possession of child pornography. Even if we assume for purposes of this case that possession is a lesser included offense of either receipt or viewing of child pornography, nonetheless, we "may not affirm an included offense on 'a theory not presented to the' trier of fact." *United States v. Riley*, 50 M.J. 410, 415 (C.A.A.F. 1999) (citation omitted) (quoting *Chiarella v. United States*, 445 U.S. 222, 236

*(Footnote continues on next page)*

have found the essential element in both specifications that Appellant received and viewed the four images during the charged timeframe beyond a reasonable doubt, and we are similarly not convinced.[25] We consider whether our finding prejudiced Appellant in our conclusion below.

### c. Appellant's Conduct was Service Discrediting

The Government charged Appellant's conduct as "of a nature to bring discredit upon the armed forces," or as understood colloquially, "service discrediting." Appellant claims in a sixth assignment of error that the Government introduced no evidence that his conduct was service discrediting beyond the conduct itself. We disagree.

Appellant draws our attention to the senior trial counsel's abrupt findings argument that "[a] service member that is receiving and downloading child pornography, that's service discrediting," and that Appellant "knowingly and wrongfully viewed child pornography and that is service discrediting." Based on the argument, the only theory the Government presented to the members, Appellant argues, is that Appellant's conduct was *per se* discrediting. Citing *United States v. Phillips*, 70 M.J. 161, 164 (C.A.A.F. 2011), Appellant invites us to conclude that the members impermissibly convicted him on a conclusive presumption of guilt. *Id.* (citing *United States v. Medina*, 66 M.J. 21 (C.A.A.F. 2008)). Appellant also claims we cannot find his convictions legally sufficient because "an appellate court may not affirm on a theory not presented to the trier of fact and adjudicated beyond a reasonable doubt." *Id*. at 27.

Appellant's analogy of the imprecision by which the senior trial counsel made a case for guilt in her findings argument to *Medina* is inapt. Even if we agree that the senior trial counsel's argument drew upon no evidence to adequately persuade a factfinder, or us, of Appellant's guilt, it is not cause to base a finding of legal insufficiency. It is one thing to consider whether an appellant was prejudiced by the Government's failure to provide notice of offenses not charged or otherwise included in the specification as was the case in *Medina*. It is quite another to conclude that a finding must be dismissed

(1980)). "To do so 'offends the most basic notions of due process,' because it violates an [appellant's] 'right to be heard on the specific charges of which he [or she] is accused.'" *Id.* (second alteration in original) (quoting *Dunn v. United States*, 442 U.S. 100, 106 (1979)).

[25] Because of our conclusion, Appellant's fourth AOE alleging that none of the six images admitted as Prosecution Exhibit 4 portrayed a visual depiction of a minor engaged in sexually explicit conduct is resolved as moot with respect to Images 88680, 37428, 43417, and 50120.

because the Government did not well-articulate in argument how the evidence proved Appellant's guilt notwithstanding evidence that a reasonable factfinder could reach the conclusion that it did.

More to the point, we disagree with Appellant's assessment that the Government presented *no evidence* to prove that his conduct was service discrediting. During his interview with the AFOSI agents, Appellant swore to the following statement, which the Government presented as evidence:

> I want to start by saying that I have dishonored the United States military uniform. I have dishonored my Air Force family. I have dishonored myself and everyone who is and has been a part of my life. In the 10 plus years that I have been in the Air Force I have not once lived the core values until now. . . . Please forgive me for dishonoring you and our Air Force family.

As properly instructed by the military judge, service discrediting conduct is misconduct which tends to harm the reputation of the service or lower it in public esteem. *See MCM,* pt. IV, ¶ 60.c.(3). Appellant's unequivocal admissions to dishonoring the service refute his claim that the members found Appellant's conduct *per se* discrediting and that they convicted on the basis of a conclusive presumption of guilt.

In spite of the senior trial counsel's decision to not argue the significance of Appellant's admissions to prove that his conduct was service discrediting, we find a rational factfinder could readily conclude from the evidence that it was. *See Phillips*, 70 M.J. at 166 (evidence of service discrediting conduct is legally sufficient if "a rational trier of fact" could "find beyond a reasonable doubt that Appellant's activity would have tended to bring discredit upon the service had the public known of it."). We are convinced that the Government met its burden of proof on the terminal element for both Specifications 1 and 2 of Charge I.

### d. Conclusion – Legal and Factual Sufficiency of Specifications 1 and 2 of Charge I

To summarize, of the six images that the Government introduced in Prosecution Exhibit 4, upon which it based, in part, its case that Appellant received and viewed child pornography during the charged timeframe, we find Appellant's convictions legally and factually sufficient as to two, Images 43381 and 43871. We find the remaining images, 43417, 50120, 88680 and 37428, admitted in Prosecution Exhibit 4 are insufficient to support Appellant's convictions because the Government failed to prove Appellant received and viewed the images during the timeframe charged by the Government.

Our assessment of the legal and factual sufficiency of Specifications 1 and 2 of Charge I relies on Images 43381 and 43871 together with evidence of

Appellant's admissions, the search terms he used, the titles of websites he visited, and evidence admitted under Mil. R. Evid. 404(b) to show the absence of mistake on the part of Appellant and his motive or intent to commit the child pornography offenses. We also rely on SA VL's testimony that she discovered an image of a female infant's bare bottom and exposed genitalia when she visited a website, which forensic evidence established that Appellant had viewed just two days prior to Appellant's AFOSI interview.

In light of our finding four images insufficient to support the convictions, we nonetheless find no prejudice to Appellant. The record shows that the members were properly instructed to determine whether Appellant received and viewed child pornography during the charged timeframe. The military judge explained that the determination whether the six images described in Prosecution Exhibit 4 constituted child pornography was solely within their discretion using the instructions he provided, which included that Appellant's conduct had to have occurred during the timeframe charged by the Government. The members returned a general verdict convicting Appellant of receiving and viewing child pornography, on divers occasions, during the charged timeframe.

A general verdict is allowed "even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt." *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007) (citations omitted); *see also Schad v. Arizona*, 501 U.S. 624, 631 (1991) ("We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone.").

Considering the two images we find sufficient to support the convictions along with the weight the members may have given to Appellant's admissions and other evidence, the factfinder had more than one means by which a verdict may have been reached. Even if the members may not have been convinced, as we are not convinced, that each of the six images admitted as Prosecution Exhibit 4, were sufficient to satisfy the elements of the charged offenses, we find "no reason to question that the panel" could not follow the military judge's instructions. *United States v. Custis*, 65 M.J. 366, 372 (C.A.A.F. 2007); *see also United States v. Piolunek*, 74 M.J. 107, 111–12 (C.A.A.F. 2015) ("convictions by general verdict for possession and receipt of visual depictions of a minor engaging in sexually explicit conduct on divers occasions by a properly instructed panel need not be set aside after the [Court of Criminal Appeals] decides several images considered by the members do not depict the genitals or pubic region.").

Accordingly, viewing all the evidence in the record in the light most favorable to the Prosecution, we conclude that a rational factfinder could have found Appellant guilty beyond a reasonable doubt of all the elements of receiving and viewing child pornography on divers occasions, as charged in Specifications 1 and 2 of Charge I, and that the evidence is legally sufficient to support Appellant's conviction of both offenses. Having weighed the evidence in the record and made allowances for not having personally observed the witnesses, we also conclude the evidence is factually sufficient and are convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's convictions both legally and factually sufficient.

### E. Omissions and Errors in the Trial Transcript

Appellant requests we set aside his confinement and dishonorable discharge because omissions and errors in the trial transcript render it nonverbatim and the record of trial incomplete. We find the omissions and errors are insubstantial and decline to grant the requested relief.

#### 1. Additional Background

During findings the Government admitted segments from a video recording of Appellant's interview with two AFOSI agents. Trial counsel played all or a portion of these segments in opening statement and published them throughout the trial, including during SA VL's testimony; however the transcript does not reliably reflect the order or length of the segments played by the Government. For example, if the transcript were correct, the trial counsel played the same recording twice and consecutively to the members. The reliability of the starting and ending timestamps in the record, considered along with discrepancies between the content of an identified segment and the substance of SA VL's testimony, leaves doubt that a particular segment was played as indicated in the transcript.

In addition, the transcript reflects 158 uses of "inaudible" or "unintelligible" in place of the words actually spoken on the record throughout the 623-page transcript. The majority of the annotations, 71, are ascribed to the military judge and appear throughout the transcript. Seventeen annotations appear in the questions (9) and answers (8) of four witnesses during pretrial motions and trial on the merits that comprise 127 pages of the transcript. Fifty-nine annotations appear disproportionately in the combined 66 pages of argument and rebuttal that comprise the findings and sentencing portions of trial: 57 appear in the 49 pages of transcribed findings argument, and 2 in 17 pages of sentencing argument. Most of the 57 annotations in findings argument appear during the playback of video recordings of Appellant's interview with two AFOSI agents that were admitted into evidence. The portions of these excerpts include 39 annotations in the transcript because the court re-

porter apparently could not understand what the agents (21) and Appellant (18) were saying because of the quality of the initial recording, or playback, or both. Eighteen of the 57 annotations appear in findings arguments of counsel themselves, nine each. Other annotations unaccounted for here appear throughout the transcript.[26]

**2. Law**

When a sentence includes a punitive discharge, Article 54, UCMJ, 10 U.S.C. § 854, requires the preparation of a complete record of the proceedings. A complete record of proceedings requires, among other things, "a verbatim transcript of all sessions except sessions closed for deliberations and voting." R.C.M. 1103(b)(2)(D)(v). A record is not verbatim if "the omitted material was substantial, either qualitatively or quantitatively." *United States v. Davenport*, 73 M.J. 373, 377 (C.A.A.F. 2014) (internal quotations and citations omitted). An omission is qualitatively substantial "if the substance of the omitted material related directly to the sufficiency of the Government's evidence on the merits." *Davenport*, 73 M.J. at 377 (internal quotation and citation omitted). An omission is "quantitatively substantial unless the totality of omissions . . . becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness." *Id.* (internal quotation and citation omitted) (alteration in original).

"The question of what constitutes a substantial omission is conducted on a case-by-case, fact based inquiry." *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999). Failure to comply with R.C.M. 1103(b)(2) "does not necessarily require reversal." *Id.* (citation omitted). Rather, an incomplete record "raises a presumption of prejudice which the Government may rebut." *Id.*

**3. Analysis**

The court reporter did not include a verbatim, i.e. word for word, transcript of Appellant's interview with two AFOSI agents when excerpts were played by trial counsel during opening statement and findings argument, and published to the members during SA VL's testimony.[27] Similarly, one cannot

---

[26] Our intent is not to provide a complete accounting, but we note, also: Providence inquiry during Appellant plea of guilty (3), preliminary instructions to the members (2), review of the convening order (2), voir dire (4), ruling on challenges (3), and the military judge's comments about the manner and order of the proceedings (18).

[27] Air Force Manual 51–203, *Records of Trial*, ¶ 12.8 (4 Sep. 2018) ("Transcribe verbatim audio or video recordings introduced at trial.").

reliably determine which segments of Appellant's AFOSI interview were played to the members at various times on the record.

Nonetheless, the segments of Appellant's interview were admitted as a prosecution exhibit and included in the record of trial. We find that the substance of Appellant's AFOSI interview admitted by the Government can "be recalled with fidelity" because it is located elsewhere in the transcript in its entirety and was addressed by SA VL during her testimony. *Davenport*, 73 M.J. at 377. As for the "inaudible" and "unintelligible" annotations used in place of the words actually spoken on the record, we find they do not prohibit a reviewing authority from ascertaining the context of any material thought or discussion. Accordingly, we do not find the errors and omissions limit our ability to conduct a complete review of the trial proceedings in accordance with Article 66, UCMJ, and therefore, conclude that the record of trial contains a substantially verbatim transcript of the proceedings.

## F. Sentence Severity

Appellant claims that his sentence, which includes a dishonorable discharge and three years confinement, is unduly severe "particularly in comparison to sentences received in closely related cases." Appellant does not cite any case, much less a closely related one, or provide a factual basis for us to evaluate his claim.

### 1. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 142–48 (C.A.A.F. 2010).

We "are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). When arguing sentence disparity and asking us to compare his sentence with the sentences of others, Appellant bears the burden of demonstrating those other cases are "closely related"

to his, and if so, that the sentences are "highly disparate." *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Cases are "closely related" when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared . . . ." *Id*. If an appellant carries that burden, then the Government must show a rational basis for the sentence differences. *Id*

### 2. Analysis

Appellant fails to demonstrate a closely related case disparate to his own. Appellant was not a co-actor involved in a common crime; he was not involved with other Airmen in a common or parallel scheme; and there was no "direct nexus" between Appellant and any other servicemember whose sentence Appellant might invite us to compare to his own. Consequently, Appellant has not met his burden to demonstrate a closely related case. *See, e.g., Ballard*, 20 M.J. at 285.

We have given individualized consideration to Appellant, the nature and seriousness of his offenses as shown by the facts and circumstances, his record of service, and all other matters contained in the record of trial. During the charged timeframe, Appellant sought child pornography using search terms unambiguously conceived to return images of minors engaged in sexually explicit conduct. Appellant made admissions that during the charged timeframe his need to view child pornography became an "addiction" that fueled his desire to see "younger and younger" images of minors because images of older children no longer provoked the same sexual gratification. On duty, Appellant wrongfully searched for and viewed adult pornography on a government computer. As an appropriate matter in aggravation directly related to the offenses, Appellant admitted that he struggled unsuccessfully to harness his addiction to pornography, above all child pornography, which the members may well have weighed meaningfully by adjudging three year's confinement. On these facts we are assured the members gave individualized consideration to Appellant as have we.

Appellant faced a maximum term of confinement of 12 years after the military judge found an unreasonable multiplication of charges and instructed the members to consider Specifications 1 and 2 of Charge I as one offense. *See* R.C.M. 307(c)(4); *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012). Trial counsel recommended a sentence of a dishonorable discharge, confinement for five years, and reduction to the grade of E-1. Trial defense counsel argued that no confinement should be adjudged. Notwithstanding disparities in the recommendations of both counsel compared to the adjudged sentence, we find Appellant's approved sentence of a dishonorable discharge, confinement for

three years, reduction to the grade of E-1, and a reprimand is not inappropriately severe as a matter of law.

## G. Timeliness of Appellate Review

We review de novo whether an appellant has been denied the due process right to a speedy post-trial review and appeal. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed. *Id.* at 142. When a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted).

Appellant's case was originally docketed with the court on 22 January 2018. The delay in rendering this decision by 22 July 2019 is presumptively unreasonable. However, we find no violation of Appellant's right to due process and a speedy post-trial review and appeal. Analyzing the *Barker* factors, we find the length of the delay—one month beyond the *Moreno* standard—is not excessively long. The reasons for the delay include the time required for Appellant to file his brief on 4 February 2019 and the Government to file its answer on 20 March 2019.

Both filings were delayed, owing in part to a decision by the Government to omit evidence from the record of trial docketed with the court. On 27 July 2018, this court returned the record to The Judge Advocate General for return to the convening authority for action consistent with R.C.M. 1104(d) to produce and authenticate a certificate of correction to resolve the matter of the sealed Prosecution Exhibits 3, 4, and 8, which the Government deliberately omitted.[28] On 30 October 2018, the Government submitted a motion to

---

[28] A placeholder in the record of trial for each exhibit informed the court that the exhibit "has been retained by the Office of Special Investigations, Buckley AFB, CO." Contraband notwithstanding, does not excuse the Government's duty to assemble sealed exhibits maintained by the trial counsel in a complete record of trial and then docket the record with the court "within thirty days of the convening authority action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). A plainly deficient record wanting considerably important evidence upon which the Government convicts would seemingly raise "a presumption of unreasonable delay" when the Government nonetheless files with the court a plainly deficient record. Although we find no prejudice to Appellant here, *and countenance future non-compliance will be the very rare exception*, we do not foreclose finding a record that the Government knows

*(Footnote continues on next page)*

attach the missing exhibits with an accompanying certificate of correction, which the court granted on 8 November 2018.

The court affirms the findings and sentence in this case. We recognize that Appellant began serving his three years of confinement on 29 September 2017; however, Appellant has not asserted his right to speedy appellate review or pointed to any particular prejudice resulting from the presumptively unreasonable delay for the court to complete appellate review of his case, and we find none.

Finding no *Barker* prejudice, we also find the delay is not so egregious that it adversely affects the public's perception of the fairness and integrity of the military justice system. As a result, there is no due process violation. *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In addition, we determine that Appellant is not due relief even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). Applying the factors articulated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we find relief for Appellant unwarranted.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

to be incomplete is not docketed *de jure* with the court until the Government dockets a complete record of trial.